UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

UNITED STATES OF AMERICA , CASE NO.   19-80030-CR-DIMITROULEAS

     Plaintiff,

vs.

JAMES BOCCUZZI,

     Defendant.

_____/

COURT'S INSTRUCTIONS
TO THE JURY

Members of the Jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. After I've completed these instructions, you will go to the jury room and begin your discussions – what we call your deliberations.

You must decide whether the Government has proved the specific facts necessary to find the Defendant guilty beyond a reasonable doubt.

Your decision must be based only on the evidence presented during the trial. You must not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the Court's instructions on the law.

The indictment or formal charge against a Defendant isn't evidence of guilt. The law presumes every Defendant is innocent. The Defendant does not have to prove [his] [her] innocence or produce any evidence at all. A Defendant does not have to testify, and if the Defendant chose not to testify, you cannot consider that in any way while making your decision. The Government must prove guilt beyond a reasonable doubt. If it fails to do so, you must find the Defendant not guilty.

The Government's burden of proof is heavy, but it doesn't have to prove a Defendant's guilt beyond all <u>possible</u> doubt. The Government's proof only has to exclude any "reasonable doubt" concerning the Defendant's guilt.

A "reasonable doubt" is a real doubt, based on your reason and common sense after you've carefully and impartially considered all the evidence in the case.

"Proof beyond a reasonable doubt" is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs. If you are convinced that the Defendant has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

You must consider some witnesses' testimony with more caution than others.

For example, paid informants, witnesses who have been promised immunity from prosecution, or witnesses who hope to gain more favorable treatment in their own cases, may have a reason to make a false statement in order to strike a good bargain with the Government.

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

You must consider some witnesses' testimony with more caution than others.

In this case, the Government has made a plea agreement with a Codefendant in exchange for [his] [her] testimony. Such "plea bargaining," as it's called, provides for the possibility of a lesser sentence than the Codefendant would normally face. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

But a witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government.

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

And the fact that a witness has pleaded guilty to an offense isn't evidence of the guilt of any other person.

If the Government offers evidence that a Defendant made a statement or admission to someone after being arrested or detained, you must consider that evidence with caution and great care.

You must decide for yourself (1) whether the Defendant made the statement, and (2) if so, how much weight to give to it. To make these decisions, you must consider all the evidence about the statement – including the circumstances under which it was made.

You've been permitted to take notes during the trial. Most of you – perhaps all of you – have taken advantage of that opportunity.

You must use your notes only as a memory aid during deliberations. You must not give your notes priority over your independent recollection of the evidence. And you must not allow yourself to be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

**Charts or Summaries Admitted in Evidence**

Certain summaries and charts were admitted in evidence.  You may use those summaries and charts as evidence.

It is up to you to decide how much weight to give the charts and summaries.

**Charts or Summaries Displayed But**
**Not Received in Evidence**

Certain summaries and charts were shown to you to help explain other evidence that was admitted, such as the slides from the government's opening statement.  These summaries and charts are not themselves evidence or proof of any facts, so you will not have these particular summaries and charts during your deliberations. If they do not correctly reflect the facts shown by the evidence, you should disregard the summaries and, charts and determine the facts from the underlying evidence.

**Introduction to Offense Instructions**

The indictment charges two separate crimes, called "counts," against the Defendant.  Each count has a number. You will be given a copy of the indictment to refer to during your deliberations.

Counts and 1 and 4 charge the crime of conspiracy.  Count 1 charges that the Defendant knowingly and willfully conspired to defraud the U.S. Food and Drug Administration and knowingly and willfully conspired to commit mail fraud and wire fraud.

Count 4 charges that the Defendant knowingly and willfully conspired to manufacture and distribute a controlled substance, that is, an anabolic steroid, and that serious bodily injury resulted to a person named "C.H." from the use of one of the alleged anabolic steroids; that is, one of the alleged anabolic steroids was a but-for cause of serious bodily injury to C.H.

**(Count 1)**
**O13.1**
**General Conspiracy Charge**
**18 U.S.C. § 371**

It's a separate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal crime if actually carried out.

Count 1 charges the Defendant with a conspiracy: to defraud the United States Food and Drug Administration (FDA), an agency of the United States Department of Health and Human Services; and to commit the Federal crimes of mail fraud and wire fraud.

A "conspiracy" is an agreement by two or more people to commit an unlawful act.    In other words, it is a kind of "partnership" for criminal purposes. Every member of a conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan, or that those who were members made any kind of formal agreement.

The Government does not have to prove that the members planned together all the details of the plan or the "overt acts" that the indictment charges would be carried out in an effort to commit the intended crime.

The heart of a conspiracy is the making of the unlawful plan itself followed by the commission of any overt act. The Government does not have to prove that the conspirators succeeded in carrying out the plan.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1)     two or more persons in some way agreed to try to accomplish a shared and
        unlawful plan;

    (2)     the Defendant knew the unlawful purpose of the plan and willfully joined in it;

    (3)     during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

    (4)     the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

An "overt act" is any transaction or event, even one that may be entirely innocent when viewed alone, that a conspirator commits to accomplish some object of the conspiracy.

A person may be a conspirator without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If the Defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that's sufficient for you to find the Defendant guilty.

But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy. A person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

**(Count 1)**
**O13.2**
**Multiple Objects of a Conspiracy**

Count 1 charges that the Defendant conspired:

    (1) to defraud the FDA; and

    (2) to commit the offense of mail fraud; and

    (3) to commit the offense of wire fraud.

In other words, Count 1 of the indictment charges that the Defendant conspired to defraud FDA and to commit two separate substantive crimes.

The Government does <u>not</u> have to prove that the Defendant willfully conspired to defraud the FDA <u>and</u> willfully conspired to commit <u>both</u> substantive crimes.  It is sufficient if the Government proves beyond a reasonable doubt that the Defendant willfully conspired with someone else to defraud the FDA <u>or</u> commit mail fraud <u>or</u> wire fraud.

To return a verdict of guilty, you must all agree on <u>which</u> of the two substantive crimes the Defendant conspired to commit, <u>or</u> you must all agree that the Defendant willfully conspired to defraud the FDA.

**(Count 1)**
**O13.6, as modified**
**Object 1: Conspiracy to Defraud the United States**

It's a Federal crime for anyone to conspire or agree with someone else to defraud the United States or any of its agencies, including the FDA.

To "defraud" the FDA means to interfere with any of FDA's lawful government functions by deceit, craft, or trickery, even if the FDA does not suffer a loss of property or money.

A "conspiracy" is an agreement by two or more persons to commit an unlawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan, or that those who were members made any kind of formal agreement. The heart of a conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that the conspirators succeeded in carrying out the plan.

The Government does not have to prove that the members planned together all the details of the plan or the "overt acts" that the indictment charges would be carried out in an effort to commit the intended crime.

The Defendant can be found guilty of the crime of conspiracy to defraud the FDA if the following facts are proved beyond a reasonable doubt:

(1)    two or more people in some way agreed to try to accomplish a shared and unlawful plan;

(2)    the Defendant knew the unlawful purpose of the plan and willfully joined in it;

(3)     during the conspiracy, one of conspirators knowingly engaged in at one overt act described in the indictment;

(4)     the overt act was knowingly committed at or about the time alleged and with the purpose carrying out or accomplishing some object of the conspiracy.

An "overt act" is any transaction or event, even one which may be entirely innocent when viewed alone, that a conspirator commits to accomplish some object of the conspiracy.

A person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If the Defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan — and willfully jointed in the plan on at least on occasion — that's sufficient for you to find the Defendant guilty.

But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy.  Also, a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

**(Count 1)**
**O50.1, as modified**
**Object 2: Mail Fraud**

It's a Federal crime to use the United States mail or transmit something by private or commercial interstate carrier in carrying out a scheme to defraud someone.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1)    the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

(2)    the false or fraudulent pretenses, representations, or promises were about a material fact;

(3)    the Defendant intended to defraud someone; and

(4)    the Defendant used a [the United States Postal Service by mailing or by causing to be mailed] [private or commercial interstate carrier by depositing or causing to be deposited with the carrier] something meant to help carry out the scheme to defraud.

A "private or commercial interstate carrier" includes any business that transmits, carries, or delivers items from one state to another. It doesn't matter whether the message or item actually moves from one state to another as long as the message or item is delivered to the carrier.

A "scheme to defraud" means any plan or course of action intended to deceive or cheat someone out of money or property using false or fraudulent pretenses, representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a material fact, it is made with intent to defraud, and the speaker either knows it is untrue or makes it with reckless indifference to the truth.  It may be false or fraudulent if it is made with the intent to defraud and is a half-truth or effectively conceals a material fact.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

To act with "intent to defraud" means to act knowingly and with the specific intent to use false or fraudulent pretenses, representations, or promises to cause loss or injury.  Proving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud.

The Government does not have to prove all the details about the precise nature and purpose of the scheme or that the material mailed or deposited with an interstate carrier was itself false or fraudulent. It also does not have to prove that the use of the mail or the interstate carrier was intended as the specific or exclusive means carrying out the fraud, or that the Defendant did the actual mailing or depositing. It doesn't even have to prove that anyone was actually defrauded.

To "cause" the mail or an interstate carrier to be used is to do an act knowing that the use of the mail or the carrier will usually follow in the ordinary course of business or where that use can reasonably be foreseen.

Each separate use of the mail or an interstate carrier as part of the scheme to defraud is a separate crime.

Let me remind you that in Count 1 the Defendant is not charged with committing the substantive offense of mail fraud.  Rather, he is charged with agreeing or conspiring to do so.  I am explaining to you the elements of mail fraud so that you understand one of the crimes that the Defendant is charged with conspiring to commit.  In returning your verdict in Count 1, you need

not say whether the Defendant has committed the crime of mail fraud.  Rather, your task is to decide whether the Defendant has <u>conspired</u> to commit this offense.

**(Count 1)**
**O51, as modified**
**Object 3: Wire Fraud**

It's a Federal crime to use interstate wire, radio, or television communications to carry out a scheme to defraud someone else.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1)     the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

(2)     the false pretenses, representations, or promises were about a material fact;

(3)     the Defendant acted with the intent to defraud; and

(4)     the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

A "scheme to defraud" means any plan or course of action intended to deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a material fact that the speaker knows is untrue or makes with reckless indifference to the truth, and makes with the intent to defraud. A statement or representation may be "false" or "fraudulent" when it is a half-truth, or effectively conceals a material fact, and is made with the intent to defraud.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence

a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

To act with "intent to defraud" means to act knowingly and with the specific intent to use false or fraudulent pretenses, representations, or promises to cause loss or injury. Proving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud.

The Government does not have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. It also doesn't have to prove that the material transmitted by interstate wire was itself false or fraudulent; or that using the wire was intended as the specific or exclusive means of carrying out the alleged fraud; or that the Defendant personally made the transmission over the wire. And it doesn't have to prove that the alleged scheme actually succeeded in defrauding anyone.

To "use" interstate wire communications is to act so that something would normally be sent through wire communications in the normal course of business.

Each separate use of the interstate wire communications as part of the scheme to defraud is a separate crime.

Let me remind you that in Count 1 the Defendant is not charged with committing the substantive offense of wire fraud. Rather, he is charged with agreeing or conspiring to do so. I am explaining to you the elements of wire fraud so that you understand one of the crimes that the Defendant is charged with conspiring to commit. In returning your verdict in Count 1, you need not say whether the Defendant has committed the crime of wire fraud. Rather, your task is to decide whether the Defendant has conspired to commit this offense.

**(Count 4)**
**Definition of a "Controlled Substance"**

In Count 4, there are six substances that are alleged to be a "controlled substance," specifically, anabolic steroids.  The six substances are:

- trendione;

- halodrol;

- epistane;

- methylstenbolone;

- dimethazine; and

- methyl-1-etiocholenolol.

The Federal Controlled Substances Act of Title 21 of the United States Code defines what substances are unlawful controlled substances.

A "controlled substance" means a drug or other substance, or immediate precursor, that is included in one of the drug schedules of the Federal Controlled Substances Act.  Schedule III is one of the drug schedules and lists numerous substances, including "anabolic steroids."

An "anabolic steroid," under Schedule III, means any drug or hormonal substance, chemically and pharmacologically related to testosterone (except for some exceptions that are not relevant to this case).

Schedule III lists the chemical names of several dozen anabolic steroids.  Trendione, halodrol, and epistane are anabolic steroids whose chemical names are listed in Schedule III. Trendione, halodrol, and epistane were added to Schedule III on December 18, 2014.

Methylstenbolone, dimethazine, and methyl-1-etiocholenolol are not listed on the Schedule III's list of anabolic steroids.

On December 18, 2014, a new Federal law became effective, entitled the "Designer Anabolic Steroid Control Act of 2014" (DASCA).  DASCA added a new category of anabolic steroids to controlled substances, for drugs or substances that are <u>not</u> named in Schedule III's list of anabolic steroids.  DASCA's new category of controlled substance anabolic steroids consists of drugs or substances that are substantially similar to anabolic steroids that are listed in Schedule III.

In this case, to prove that any of the non-listed substances —methylstenbolone, dimethazine, or methyl-1-etiocholenolol — is a "controlled substance," the Government must prove beyond a reasonable doubt that the substance:

(1)     is derived from, or has a chemical structure substantially similar to, one or more of the anabolic steroids listed in Schedule III; and

(2)     has been created or manufactured with the intent of producing a drug or other substance that either:

        promotes muscle growth; <u>or</u>

        causes a pharmacological effect similar to that of testosterone; <u>or</u>

(3)     has been, or is intended to be, marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

**(Count 4)**
**O100 (as modified), O13.2 (as modified)**
**Controlled Substances: Conspiracy**
**21 U.S.C. § 846**

As I explained to you earlier, the indictment in this case contains two different counts —
Counts 1 and 4 — that charge the crime of "conspiracy." I have previously given you instructions
on Count 1. I am now going to instruct you on Count 4.

Title 21, United States Code Section 846, makes it a crime for anyone to conspire with
someone else to do something which, if actually carried out, would be a violation of Title 21,
United States Section 841(a)(1).

Title 21, United States Code, Section 841(a)(1) makes it a crime for anyone to knowingly
manufacture or distribute a controlled substance.

Count 4 of the indictment charges the Defendant with the crime of conspiracy to commit a
violation of Title 21, United States Code, Section 841(a)(1) — that is, a conspiracy to manufacture
or distribute a controlled substance, that is an anabolic steroid.

Count 4 also alleges that serious bodily injury resulted to someone, identified as "C.H.,"
from the use of a controlled substance.

As I explained to you earlier in my instructions for Count 1, a "conspiracy" is an agreement
by two or more persons to commit an unlawful act. In other words, it is a kind of partnership for
criminal purposes. Every member of the conspiracy becomes the agent or partner of every other
member.

The Government does not have to prove that all of the people named in the indictment were
members of the plan, or that those who were members made any kind of formal agreement. The

heart of a conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that the conspirators succeeded in carrying out the plan.

The Defendant can be found guilty of Count 4 only if all the following facts are proved beyond a reasonable doubt:

(1)     two or more people in some way agreed to try to accomplish a shared and unlawful plan to manufacture or distribute a controlled substance;

(2)     the Defendant knew the unlawful purpose of the plan and willfully joined in it; and

(3)     the object of the unlawful plan was to commit a violation of Title 21, United States Code, Section 841(a)(1), that is, to manufacture or distribute a controlled substance.

Unlike the conspiracy charged in Count 1, the conspiracy charged in Count 4 does <u>not</u> require that you find that a co-conspirator committed an "overt act" in an effort to further the conspiracy.

As I explained to you earlier in my instructions on Count 1, a person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If the Defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan – and willfully joined in the plan on at least one occasion – that's sufficient for you to find the Defendant guilty.

But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy. Also, a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

With regard to the conspiracy in Count 4, the indictment charges that the Defendant conspired to commit the crime of manufacturing a controlled substance and distributing a controlled substance.  In other words, Count 4 of the indictment charges that the Defendant conspired to commit two separate crimes or substantive offenses.

As I instructed you earlier during my instructions on the conspiracy charged in Count 1, it is not necessary to prove that the Defendant under consideration conspired to commit both substantive crimes.  It is sufficient if the Government proves beyond a reasonable doubt that the Defendant willfully conspired with someone to commit one of these crimes.  However, to return a verdict of guilty on Count 4, you must all agree on which of the two crimes the Defendant conspired to commit.

With regard to the conspiracy charged in Count 4, I instruct you that proof of several, separate conspiracies is not proof of the conspiracy charged in Count 4 unless one of the conspiracies that is proved is the conspiracy charged in Count 4.

You must decide whether the conspiracy charged in Count 4 existed between two or more conspirators.  If you find that no such conspiracy existed, then you must find the Defendant not guilty of that charge.

However, if you decide that the conspiracy charged in Count 4 did exist, then you must decide who the members of conspirators were. And if you decide that a particular Defendant was a member of some other conspiracy — not the one charged in Count 4 — then you must find that Defendant not guilty of Count 4.

In other words, to find a Defendant guilty of the conspiracy charged in Count 4, you must all agree that the Defendant was a member of the conspiracy charged in Count 4 — not a member of some other, separate conspiracy.

**(Count 4)**
**O.98 (as modified), S.6**
**Objects of Controlled Substances Act Conspiracy**
**21 U.S.C. § 841(a)(1)**

As I mentioned a few moments ago, Count 4 of the indictment charges a violation of Title 21, United States Code, 846, which makes it a separate crime or offense for anyone to conspire or agree with someone else to do something which, if carried out, would be a violation of Title 21, United States Code, Section 841(a)(1).

In Count 4, the indictment alleges that the Defendant conspired to commit two separate crimes that are violations of Title 21, United States Code, Section 841(a)(1): distributing a controlled substance and manufacturing a controlled substance.

The crimes of distributing a controlled substance and manufacturing a controlled substance are <u>not</u> charged as separate crimes in the indictment. I will address these crimes separately now so that you will understand each of the crimes that the Defendant is charged with conspiring to commit.

Title 21, United States Code, Section 841(a)(1) makes it a crime for anyone to distribute a controlled substance.  The Defendant may be convicted of the crime of distributing a controlled substance only if all the following facts are proved beyond a reasonable doubt:

(1)      the Defendant knowingly distributed a controlled substance; and

(2)      the Defendant knew the substance was a controlled substance.

To "distribute" is to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

The Defendant "knowingly" distributed a controlled substance if:

(1) the Defendant knew he distributed a substance that actually was listed on a Federal schedule of controlled substances, or was a controlled substance under the Designer Anabolic Steroid Control Act, even if the Defendant did not know the identity of the substance; or

(2) the Defendant knew that he distributed trendione, halodrol, or epistane, even if the Defendant did not know the substance was listed on a Federal schedule of controlled substances; or

(3) the Defendant knew dimethazine, methylstenbolone, or methyl-1-etiocholenolol is derived from or has a chemical structure substantially similar to one or more anabolic steroids listed in the Federal Controlled Substances Act, and the substance had been or was intended to be marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

Title 21, United States Code, Section 841(a)(1) makes it a crime for anyone to manufacture a controlled substance. The Defendant may be convicted of the crime of manufacturing a controlled substance only if all the following facts are proved beyond a reasonable doubt:

(1)    the Defendant knowingly manufactured a controlled substance; and

(2)    the Defendant knew the substance was a controlled substance.

To "manufacture" means to produce, prepare, or process a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis, and

includes any packaging or repackaging of such substances or labeling or relabeling of its container.

The Defendant "knowingly" manufactured a controlled substance if:

(1) the Defendant knew he manufactured a substance that actually was listed on a Federal schedule of controlled substances, or was a controlled substance under the Designer Anabolic Steroid Control Act, even if the Defendant did not know the identity of the substance; or

(2) the Defendant knew that he manufactured trendione, halodrol, or epistane, even if the Defendant did not know the substance was listed on a Federal schedule of controlled substances; or

(3) the Defendant knew dimethazine, methylstenbolone, or methyl-1-etiocholenolol is derived from or has a chemical structure substantially similar to one or more anabolic steroids listed in the Federal Controlled Substances Act, and the substance had been or was intended to be marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

Let me remind you that the Defendant is not charged in Count 4 with committing the substantive offenses of distributing a controlled substance or manufacturing a controlled substance. Rather, he is charged with conspiring or agreeing to commit this offense. In returning your verdict in Count 4, you need not say whether the Defendant has committed the crimes of

distributing a controlled substance or manufacturing a controlled substance.  Rather, it is your task

to determine whether the Defendant has <u>conspired</u> to commit these offenses.

**(Count 4)**
**Allegation of Serious Bodily Injury**

Count 4 of the indictment alleges that during the conspiracy, serious bodily injury resulted

to an individual named "C.H." from the use of methyl-1-etiocholenolol.

You will determine whether this allegation is true <u>only</u> if you first found that the Defendant

is guilty of Count 4.

If you find the Defendant is guilty of Count 4, then in order for you to find the serious

bodily injury allegation to be true, you must unanimously conclude beyond a reasonable doubt

that:

(1)     methyl-1-etiocholenolol was a substance that the Defendant conspired to
        manufacture or distribute; <u>and</u>

(2)     methyl-1-etiocholenolol is a "controlled substance" under the instructions I have
        given you for the definition of a controlled substance; <u>and</u>

(3)     that methy-1-etiocholenolol was a but-for cause of serious bodily injury to C.H. In
        other words, but for the fact that C.H. ingested methyl-1-etiocholenolol, C.H. would
        not have suffered serious bodily injury.

"Serious bodily injury" means bodily injury that involves:

(i)     a substantial risk of death;

(ii)    protracted and obvious disfigurement; or

(iii)   protracted loss or impairment of the function of a bodily member, organ, or mental
        faculty.

There is no requirement that the Government prove that the Defendant under consideration

intended to cause serious bodily injury to C.H. or that the Defendant knew, or should have known,

that C.H. was being exposed to methyl-1-etiocholenolol during the conspiracy.

If you unanimously conclude that the evidence proves beyond a reasonable doubt that the

serious bodily injury allegation is true, you will say so in the verdict form concerning Count 4.

### B9.1A
### On or About; Knowingly; Willfully – Generally

You'll see that the indictment charges that a crime was committed "on or about" a certain date. The Government doesn't have to prove that the crime occurred on an exact date. The Government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged.

The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident.

[The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that [his] [her] conduct may be violating.]

Each count of the indictment charges a separate crime. You must consider each crime and the evidence relating to it separately. If you find the Defendant guilty or not guilty of one crime, that must not affect your verdict for any other crime.

I caution you that the Defendant is on trial <u>only</u> for the specific crimes charged in the indictment. You're here to determine from the evidence in this case whether the Defendant is guilty or not guilty of those specific crimes.

You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later.

Your verdict, whether guilty or not guilty, must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and will speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it, date it, and carry it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the marshal. The marshal will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. But I caution you not to tell me how many jurors have voted one way or the other at that time.